ATTORNEYS FOR APPELLANT
Ann M. Sutton
Marion County Public Defender

Katherine A. Cornelius
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Joby Jerrells
Andrew Kobe
Deputies Attorney General

# In the
# Indiana Supreme Court

_____

No. 49S04-0503-JV-00076

K.S.,

*Appellant (Respondent below),*

v.

STATE OF INDIANA,

*Appellee (Petitioner below).*

_____

Appeal from the Marion Superior Court, Juvenile Division, No. 49D09-0205-JD-002025
The Honorable Julie Cartmel, Magistrate

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A04-0308-JV-00383

_____

**June 22, 2006**

**Shepard, Chief Justice.**

Like the rest of the nation's courts, Indiana trial courts possess two kinds of "jurisdiction." Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties.

1

Where these two exist, a court's decision may be set aside for legal error only through direct appeal and not through collateral attack. Other phrases recently common to Indiana practice, like "jurisdiction over a particular case," confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations.

**Facts and Procedural History**

On May 3, 2002, the State filed a petition in Marion Superior Court, Juvenile Division, alleging that K.S. was a delinquent child for committing acts constituting a class A misdemeanor battery if committed by an adult. The court's probation department filed a preliminary inquiry and investigation report. The same day, the court held an initial hearing. It determined that it had authority to hear the matter after confirming K.S.'s age. K.S. admitted to the allegations on May 10, and the court adjudicated him to be delinquent and placed him on probation.

Over the next year, K.S. violated his probation several times. On October 31, 2002, K.S. admitted to using language towards a teacher sufficiently disrespectful to provoke suspension from school. On December 4, 2002, K.S. admitted to running away. The juvenile court ordered a suspended commitment to the Department of Correction (DOC) for these violations. On March 12, 2003, K.S. admitted failing to submit verification of sign-in and sign-out sheets for school; the court continued the suspended commitment and placed K.S. on intensive probation.

This appeal stems from K.S.'s most recent probation violation. On the evening of May 10, 2003, K.S.'s sister K.J. answered a phone call for K.S. and called out to him twice that the phone was for him. By the time K.S. retrieved the phone, the caller had hung up, and K.S. then began yelling at his sister. Their mother intervened to diffuse the situation. However, shortly thereafter K.S. charged K.J., grabbed her from behind and covered her mouth and nose with his hands. K.J. bit him on the hands, because she was having trouble breathing. Their mother intervened again, and eventually Indianapolis Police Officer Messer responded to the scene.

The juvenile court granted wardship to the DOC for six months for this probation violation. K.S. has appealed this disposition, claiming that the court did not have "jurisdiction over the case" from the very beginning because it failed to approve by written order the filing of the original delinquency petition. The Court of Appeals agreed with K.S. and vacated the original delinquency adjudication and all orders flowing from it, including all probation violation findings and the DOC commitment. K.S. v. State, 807 N.E.2d 769, 774 (Ind. Ct. App. 2004). We granted transfer.

## I. Jurisdiction and Procedural Error

"For some time, Indiana has adhered to the rule that the judgment of a court 'having jurisdiction of the subject matter of the suit and of the person, however irregular, is not void and not impeachable collaterally, unless it may be for fraud.'" Mishler v. County of Elkhart, 544 N.E.2d 149, 151 (Ind. 1989) (quoting Horner v. Doe, 1 Ind. 130, 133 (1848)). "By contrast, a judgment rendered without jurisdiction may be collaterally attacked." Id. (citing Bliss v. Wilson, 4 Blackf. 169 (1836)). See also 21 Stephen E. Arthur & Jerome L. Withered, Indiana Practice: Civil Trial Practice § 15.14 (1996) (party challenging a void judgment can do so by independent action).

Attorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension. The fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction. As Justice Arterburn wrote four decades ago:

> Far too often there is an inclination in a law suit to attempt to convert a legal issue into one of "jurisdiction" and from that point contend all actions of the court are void, and that the question of jurisdiction may be raised at any time or that the proceedings are subject to collateral attack and are a matter for original writs in this court.

J.I. Case Co. v. Sandefur, 245 Ind. 213, 217-18, 197 N.E.2d 519, 521 (1964).

3

The authors of the Restatement of Judgments make it apparent that this state is not alone in the casual use of the notion of jurisdiction:

> There is a strong tendency in procedural law to treat various kinds of serious procedural errors as defects in subject matter jurisdiction. This is because characterizing a court's departure in exercising authority as "jurisdictional" permits an objection to the departure to be taken belatedly. . . . The expansion of the scope of the term "jurisdiction" for procedural purposes of the foregoing kind may be expedient. . . . What is important to recognize is that quite different considerations are involved in defining the term "jurisdiction" for purposes of according finality to a judgment in a proceeding that has already run its course. In that context, "jurisdiction" should be given a narrowly defined scope.

RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e (1982).

Thus, while we might casually say, "Judge Flywheel assumed jurisdiction," or "the court had jurisdiction to impose a ten-year sentence," such statements do not have anything to do with the law of jurisdiction, either personal or subject matter. Real jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process. Thus, characterizing other sorts of procedural defects as "jurisdictional" misapprehends the concepts. See, e.g., 21 Stephen E. Arthur & Jerome L. Withered, Indiana Practice: Civil Trial Practice § 15.15 (1996)(summarizing cases that make this mistake).

K.S. argues that because the record does not reflect that the juvenile court approved the filing of the original delinquency petition, it did not have jurisdiction. It is a claim that rests on the provisions of the Indiana Code concerning how to initiate a juvenile proceeding. "The prosecuting attorney may file a petition alleging that a child is a delinquent child." IND. CODE ANN. § 31-37-10-1(a) (West 1999). After the filing:

> The juvenile court shall do the following:
> (1) Consider the preliminary inquiry and the evidence of probable cause.

4

> (2) Approve the filing of a petition if there is probable cause to
> believe that:
> (A) the child is a delinquent child; and
> (B) it is in the best interests of the child or the public that the
> petition be filed.

IND. CODE ANN. § 31-37-10-2 (West 1999). Whether or not the juvenile court's approval of the filing of the petition needs to be explicitly stated in the record is a matter of first impression. The Indiana Code provides no definition of "approval" in this instance.

Still, there is no question that the juvenile court had subject matter and personal jurisdiction over this case. "The question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs." Troxel v. Troxel, 737 N.E.2d 745, 749 (Ind. 2000). A juvenile court indeed has exclusive jurisdiction over a proceeding alleging a child to be a delinquent child. IND. CODE ANN. § 31-30-1-1 (West 1999). As for personal jurisdiction, K.S. was a Marion County resident who submitted himself to the authority of the court.

K.S.'s claim of procedural error is untimely. Despite the alleged error occurring in the original delinquency proceedings for battery, K.S. did not object during these proceedings. K.S.'s collateral attack after being committed to the DOC, characterized as jurisdictional, is not.

## II. Other Claims of Error

Having determined that the trial court had jurisdiction and that the alleged procedural defect claim was waived, we now turn to issues the Court of Appeals did not address.

A. Separation of Witnesses. K.S. cites Indiana Evidence Rule 615 as the sole authority for his position that the trial court erred in allowing his mother to stay in the courtroom throughout the trial despite its grant of K.S.'s request for separation of witnesses. (Appellant's Br. at 25-28.) Rule 615 states:

5

> At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of or discuss testimony with other witnesses, and it may make the order on its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person . . . .

Ind. Evidence Rule 615.

Indiana juvenile law designates a child's parent as a party to the proceedings and grants the parent "all rights of parties provided under the Indiana Rules of Trial Procedure." IND. CODE ANN. § 31-37-10-7 (West 1999). As K.S.'s parent, his mother was a party not covered by the order for a separation of witnesses.

B. Guardian Ad Litem. K.S. argues that his mother's interests were adverse to his at trial and therefore the court erred in failing to appoint a guardian ad litem. K.S. claims his mother had a conflict of interest because she was the victim of the crime, but according to the testimony, K.J. was the victim. (Tr. at 18-21, 26, 32.) K.S. then claims that the conflict of interest was potentially greater because his mother was likewise the parent of the victim. The parent of an alleged juvenile delinquent does not have a conflict of interest by virtue of being a parent of both the juvenile and the victim. See Whipple v. State, 523 N.E.2d 1363, 1369-70 (Ind. 1988) (grandfather who advised grandson to waive his right to remain silent did not have interests adverse to grandson who murdered his mother and father – the grandfather's daughter and son-in-law).

The Indiana Code leaves to the juvenile court's discretion whether to appoint a guardian ad litem in delinquency matters. "The juvenile court may appoint a guardian ad litem or a court appointed special advocate, or both, for the child at any time." IND. CODE ANN. § 31-32-3-1 (West 1999)(emphasis added).[1] The purpose of a guardian ad litem is to represent and protect the best interests of the child. IND. CODE ANN. § 31-32-3-6 (West 1999). A juvenile court is well within its discretion when it decides not to appoint a guardian ad litem to a juvenile whose mother does not have a conflict of interest. Further, K.S. was represented by counsel hired to

---

[1] But see IND. CODE ANN. § 31-34-10-3 (West 1999 & Supp. 2005)(requiring court to appoint guardian ad litem, court appointed special advocate, or both, when child is alleged to be a child in need of services).

6

protect his best interests, and counsel was eligible to be appointed guardian ad litem in the event the court chose to appoint one. IND. CODE ANN. § 31-32-3-3 (West 1999).

C. Sufficiency of the Evidence. K.S. claims that the accounts of the battery given by his mother and K.J., the basis for the most recent probation violation, were inconsistent, and therefore the finding of a probation violation should be reversed.

K.S. notes that according to Officer Messer, the mother and K.J. both reported to him at the scene that K.S. had struck K.J. and pulled her hair. At the probation violation hearing, the mother testified that K.S. held his hand over K.J.'s mouth and specifically denied that K.S. had struck K.J. or pulled her hair. (Tr. at 26-27.) K.J. testified to the same story but could not recall if she had told Messer whether K.S. had struck her or pulled her hair. (Tr. at 19, 31.) At the dispositional hearing, the mother testified that K.S. became upset with K.J. because she told him to run errands, whereas at the probation violation hearing the mother stated the initiating event was a missed phone call. (Tr. at 25, 90.)

In reviewing the sufficiency of the evidence in a juvenile adjudication, "we neither re-weigh the evidence nor judge the credibility of the witnesses. Rather, we look only to the evidence most favorable to the trial court's judgment and to the reasonable inferences to be drawn from that evidence." Vance v. State, 640 N.E.2d 51, 57 (Ind. 1994). We affirm if there is substantial probative evidence to support the conclusion. Al-Saud v. State, 658 N.E.2d 907, 909 (Ind. 1995).

K.S. refers us to Davenport v. State for the proposition that when a sole witness gives inherently contradictory testimony that is either equivocal or coerced, and there is a complete lack of circumstantial evidence, a trial court should be reversed. 689 N.E.2d 1226, 1230 (Ind. 1997). Here, of course, there were multiple witnesses for the State, and each of the somewhat varying accounts indicates that a battery occurred. The evidence was sufficient.

D. K.S.'s Sentence. K.S. argues that the court did not act with rehabilitation in mind when it committed him to the DOC, given his mental and emotional conditions. The specific

7

disposition of a delinquent is within the juvenile court's discretion, to be guided by the following considerations: the safety of the community, the best interests of the child, the least restrictive alternative, family autonomy and life, freedom of the child, and the freedom and participation of the parent, guardian, or custodian. IND. CODE ANN. § 31-34-19-6 (West 1999). We reverse only for an abuse of discretion, namely a decision that is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." In re L.J.M., 473 N.E.2d 637, 640 (Ind. Ct. App. 1985).

K.S.'s mental and emotional issues abound. A car struck him at age four causing a coma and brain trauma requiring intensive rehabilitation. (Appellant's App. at 191.) He was diagnosed with Major Depression with Psychotic Features and Obsessive Compulsive Disorder at age thirteen. (Id.) He witnessed the hanging suicide of an uncle, and he attempted suicide seven times. (Appellant's App. at 192.) He has been diagnosed with Attention Deficit Hyperactive Disorder and Tourette Syndrome. (Id.)

K.S.'s position is that he deserves a plan of rehabilitation to help him deal with these issues. Since K.S.'s first disposition in May 2002, a plan of rehabilitation has been in effect, including a mentoring program, community service, counseling, and intensive probation. (Appellant's App. at 39-40, 88-89, 134.) After repeated probation violations, the juvenile court reasonably concluded that commitment to the DOC, where counseling and educational programs were to continue, served everyone's best interests.

**Conclusion**

The juvenile court had jurisdiction over K.S., and any alleged procedural defect was not available through collateral attack. We affirm.

**Dickson, Sullivan, Boehm, and Rucker, JJ., concur.**

8