ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Special Asst. to the State Public Defender
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana



FILED

Apr 30 2015, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

Casie S. Rudisel,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 30, 2015

Court of Appeals Case No.
84A01-1410-CR-425

Appeal from the Vigo Superior Court

The Honorable Michael R. Rader,
Judge

Cause No. 84D05-1102-FD-576

**Brown, Judge.**

[1] Casie S. Rudisel appeals the trial court's order revoking her probation and placement and ordering that she serve the balance of her original sentence. Rudisel raises one issue which we revise and restate as whether the trial court abused its discretion in sentencing her following revocation of her probation. We reverse and remand.

## Facts and Procedural History

[2] On February 9, 2012, Rudisel entered into a plea agreement with the State in which she agreed to plead guilty to operating a vehicle while intoxicated as a class D felony. Rudisel agreed to accept the sentencing recommendation of three years in the Department of Correction ("DOC") with all of that time suspended except for 180 days served on home detention as a direct commitment. The plea agreement also provided that Rudisel be placed on formal probation for 915 days and that the sentence run consecutive to the sentence in cause number "FB 3678." Appellant's Appendix at 26.

[3] That same day, the court accepted the plea agreement and sentenced Rudisel to three years suspended except for 180 days to be served as a direct commitment on home detention under the supervision of the Vigo County Community Corrections Program, with no actual days credit. The court ordered that Rudisel have until May 2, 2012, to be placed on home detention, that she be placed on formal probation for 915 days following release from home detention, that she complete the Vigo County Alcohol and Drug Program as a term of probation, and that the sentence be served consecutive to her sentence in cause number 84D03-0911-FB-3678.

[4] On April 30, 2012, and May 21, 2012, the court received letters from Rudisel,[1] and on June 1, 2012, the court held a hearing on her request to modify her sentence. That same day, the court entered an order requiring that Rudisel be placed on work release in lieu of the previously ordered home detention.

[5] On June 26, 2012, Rudisel notified the court of her inability to follow through with the modified sentence. That same day, the State filed a petition to revoke placement in the work release program and/or to revoke probation. The State alleged that Rudisel violated her direct placement by failing to enter the Vigo County Work Release Facility and begin her placement in the Work Release Program.

[6] On July 12, 2012, the court held a hearing on the State's petition and found that Rudisel violated the terms of her direct placement. The court ordered her to be evaluated for placement at Freebirds Solution Center "and if found appropriate she is to be placed in that program within two (2) weeks and pay all the program fees." *Id.* at 38. The court also ordered her to complete her home detention at that program if the arrangements could be made and to comply with the terms of the Vigo County Alcohol and Drug Program.

[7] On August 22, 2012, the State filed a petition to revoke direct placement in home detention and/or to revoke probation and alleged that on July 26, 2012, Rudisel was found to be residing at Freebirds serving her home detention as

---

[1] The record does not contain a copy of the letters.

ordered as a direct commitment, but that "[o]n August 20, 2012, the State was informed by Freebirds, [Rudisel] obsconded [sic] during ransom [sic] drug testing and has not returned to date." *Id.* at 40. The court issued a bench warrant, and Rudisel was arrested on September 2, 2012.

[8] In September 2012, the court scheduled a bond reduction hearing for October 25, 2012. On October 25, 2012, Rudisel failed to appear, and the court issued a bench warrant. On December 6, 2012, the court entered an order stating that Rudisel appeared in person in custody of the Vigo County Sheriff's Department, and ordering that Rudisel be evaluated by the Vigo County Community Corrections Program for possible placement in the Work Release Program, and that she be remanded back into the custody of the Vigo County Sheriff's Department.

[9] On February 7, 2013, the court entered an order finding that Rudisel admitted the allegations in the State's petition to revoke direct placement on home detention. The court's order states: "The Court revokes the Defendant's sentence for 104 actual days served in the Vigo County Jail." *Id.* at 59. The court ordered Rudisel "returned to formal probation and . . . to comply with the Vigo County Alcohol and Drug Program and to submit to random drug screens." *Id.*

[10] On February 7, 2014, the State filed a notice of probation violation alleging that Rudisel was not reporting as ordered, failed to respond to a letter dated December 4, 2013, and was non-compliant with the Vigo County Alcohol and

Drug Program. The court scheduled a hearing for April 11, 2014, Rudisel failed to appear at the hearing, and the court issued a bench warrant. On August 31, 2014, the bench warrant was served.

[11] On September 4, 2014, the court held a hearing. At the end of the hearing, the court stated: "So you're sentenced to the remainder of the term at the Indiana Department of Correction with credit for every day that you've served up til [sic] now." Transcript at 25. That same day,[2] the court entered an order finding that Rudisel violated the terms of her probation by not reporting to Adult Probation as ordered and that she was non-compliant with the Vigo County Alcohol and Drug Program. The court revoked Rudisel's probation and sentenced her to the DOC for "2 ½ years, the balance of her original sentence, with credit for 5 actual days served in the Vigo County Jail from August 31, 2014 to September 4, 2014." Appellant's Appendix at 72. The abstract of judgment indicates under the heading "SENTENCE:"

**Sentenced:**   **3 Years**
DOC Executed:     2 Years and 6 Months
Comm. Corr.     180 Days

---

[2] The order indicates that it was "SO ORDERED this 4th day of September, 2014," and the order was file-stamped September 5, 2014. Appellant's Appendix at 72.

*Id.* at 73. Under the headings "Dates of confinement prior to sentencing" and "Incarceration," it lists five days under "ACTUAL DAYS" and five days under "EARNED CREDIT DAYS." *Id.*

[12] In a letter received by the trial court on September 15, 2014, Rudisel asked for a count of the number of actual days served for which she received credit. She asserted that before she was sentenced on the probation violation she had credit for 104 actual days, that the chronological case summary indicates that she was sentenced to the DOC for the remainder of her time of two and one-half years with credit for five actual days, and that she was not receiving credit for the 104 days she served. On September 17, 2014, the court entered an order which stated: "The Court is advised [Rudisel] received credit for 104 actual days on a Probation Violation on February 7, 2013 and therefore cannot receive credit for those days again." *Id.* at 81.

[13] On September 25, 2014, Rudisel filed a motion for jail time credit alleging that the correct amount of jail time credit was 109 days. On September 29, 2014, the court denied Rudisel's motion and stated that Rudisel "received credit for the 104 days, from September 2, 2012 through October 5, 2012 for 34 actual days and from November 30, 2012 through February 7, 2013 for 70 actual days on the Petition to Revoke Direct Placement that was filed on August 22, 2012." *Id.* at 90. On October 6, 2014, Rudisel filed a notice of appeal of the September 4, 2014 order.

[14] In a *pro se* letter dated November 3, 2014, Rudisel asserted that the DOC was not awarding her credit for the 104 actual days that she served. On November 18, 2014, Rudisel filed a *pro se* petition for amended abstract and asserted that she was awarded 104 days jail time credit.

## Discussion

[15] The issue is whether the trial court abused its discretion in sentencing Rudisel following revocation of her probation. Ind. Code § 35-38-2-3(h) sets forth a trial court's sentencing options if the trial court finds a probation violation and provides:

> If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may impose one (1) or more of the following sanctions:
>
>> (1) Continue the person on probation, with or without modifying or enlarging the conditions.
>>
>> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.
>>
>> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

[16] The Indiana Supreme Court has held that a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* (citation omitted).

[17] Rudisel argues that the trial court incorrectly calculated the jail time credit owed to her and points to the court's February 7, 2013 order which states that she had served 104 actual days in jail upon being returned to probation after her first probation violation. According to Rudisel, she "had served 14 more days towards her direct commitment sentence than she was required to serve." Appellant's Brief at 5. Without citation to the record, she contends that "[a]t the second probation revocation hearing, the trial court apparently believed that [she] served the equivalent of 180 days prior to starting her term of probation. But she had actually served more than that." *Id.* She also contends that "[b]y denying [her] credit for those additional days that she served above the 180 days (208 − 180 = 28 total days), [she] will be required to serve an overall sentence in excess of 3 years, the statutory maximum sentence allowed for a Class D felony." *Id.* Lastly, she asserts that the abstract of judgment issued in this case not only fails to include the proper amount of jail time credit, but it includes the original 180-day community correction direct commitment and "it appears as if [she] must serve a second direct commitment term after being released from the D.O.C." *Id.*

[18] The State argues that Rudisel waived her claim because she failed to provide an adequate record for review and never objected at sentencing to the trial court's award of credit for time served. The State also contends that Rudisel has not proved that she did not receive credit for the days she claims, and that this court lacks jurisdiction because Rudisel has not shown that she exhausted all of her administrative remedies before raising the issue in court.

We initially note that this issue is appropriate for direct appeal. *See Robinson v. State*, 805 N.E.2d 783, 786 (Ind. 2004) (noting that a defendant may challenge a trial court's award of credit time on direct appeal); *Buchanan v. State*, 956 N.E.2d 124, 128 (Ind. Ct. App. 2011) (noting that a challenge to the trial court's credit time calculation is appropriate for direct appeal); *see also Murphy v. State*, 942 N.E.2d 818, 819 (Ind. 2011) (adopting the Court of Appeals opinion which held that the trial court is the proper authority to determine whether a defendant who completes an educational degree before sentencing is entitled to educational credit time). To the extent the State asserts that this court does not have jurisdiction because Rudisel has not shown that she exhausted her administrative remedies, we do not believe that the failure to exhaust administrative remedies implicates the subject matter jurisdiction of the trial court or this court. *See First Am. Title Ins. Co. v. Robertson*, 19 N.E.3d 757, 760 (Ind. 2014) (explaining "that the exhaustion of administrative remedies under AOPA is a procedural error and does not implicate the trial court's subject matter jurisdiction"), *amended on reh'g*, 27 N.E.3d 768; *K.S. v. State*, 849 N.E.2d 538, 542 (Ind. 2006) (observing that the question of subject matter jurisdiction involves a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs and that "characterizing other sorts of procedural defects as 'jurisdictional' misapprehends the concepts"). The State makes no claim that the trial court or this court generally

lack the authority to determine credit time claims, and we decline to dismiss the appeal on the basis of a lack of subject matter jurisdiction.[3]

[20] "Under the Indiana Penal Code, prisoners receive credit time that is applied to reduce their term of imprisonment." *Robinson*, 805 N.E.2d at 789. The time spent in confinement before sentencing applies toward a prisoner's fixed term of imprisonment. *Id.* The amount of additional credit or good time credit is primarily determined by the prisoner's credit time classification.[4] *Id.* Ind. Code § 35-38-3-2 requires that the judgment of conviction must include the amount of credit, including credit time earned, for time spent in confinement before sentencing. The Indiana Supreme Court has held that the DOC's abstract of judgment is not the "judgment of conviction." *Id.* at 794. The Indiana

---

[3] In *K.S. v. State*, the Indiana Supreme Court clarified jurisdiction concepts holding:

> Like the rest of the nation's courts, Indiana trial courts possess two kinds of "jurisdiction." Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs. Personal jurisdiction requires that appropriate process be effected over the parties.
>
> Where these two exist, a court's decision may be set aside for legal error only through direct appeal and not through collateral attack. Other phrases recently common to Indiana practice, like "jurisdiction over a particular case," confuse actual jurisdiction with legal error, and we will be better off ceasing such characterizations.

849 N.E.2d 538, 540 (Ind. 2006).

[4] In *Robinson*, the Court stated that credit time earned under Class I and that earned for educational achievements is sometimes described as "good time" credit because such credit is conditioned on the absence of bad conduct. 805 N.E.2d at 790. The Court also noted:

> For purposes of our opinion in *Purcell v. State*, we used the phrase "good time credit" to describe "the additional credit a prisoner receives for good behavior and educational attainment," and the phrase "credit for time served" to refer to "the credit toward the sentence a prisoner receives for time actually served." 721 N.E.2d 220, 222 [(Ind. 1999)].

*Id.* at 790 at n.5.

Supreme Court has interpreted Ind. Code § 35-38-3-2 "to require that a trial court's judgment of conviction separately include both the amount of time spent by the defendant prior to imposition of sentence and also the amount of credit time earned in accordance with the defendant's credit time class." *Id.* at 789. "Sentencing judgments that report only days spent in pre-sentence confinement and fail to expressly designate credit time earned shall be understood by courts and by the [DOC] automatically to award the number of credit time days equal to the number of pre-sentence confinement days." *Id.* at 792. "In the event of any pre-sentence deprivation of credit time, the trial court must report it in the sentencing judgment." *Id.*

[21] Rudisel asserts that according to the trial court's February 7, 2013 order, she had served 104 actual days in jail upon being returned to probation after her first probation violation. In its February 7, 2013 order revoking Rudisel's placement, the court accepted her admission to the allegations contained in the State's petition to revoke direct placement-home detention, and "revoke[d] [Rudisel's] sentence for 104 actual days served in the Vigo County Jail." Appellant's Appendix at 59. The court then returned Rudisel to formal probation and ordered her to comply with the Vigo County Alcohol and Drug Program and to submit to random drug screens. We observe that the court essentially ordered Rudisel to serve 104 days of her sentence, which she had already served in the Vigo County Jail.

[22] However, we also observe that the trial court's February 7, 2013 order that revoked Rudisel's "sentence for 104 actual days served" did not mention credit

time. *Id.* As previously mentioned, "[s]entencing judgments that report only days spent in pre-sentence confinement and fail to expressly designate credit time earned shall be understood by courts and by the [DOC] automatically to award the number of credit time days equal to the number of pre-sentence confinement days." *Robinson*, 805 N.E.2d at 792. Applying the presumption, the February 7, 2013 order establishes that Rudisel was entitled to 104 days credit for time spent in confinement plus 104 days of good credit time. *See Washington v. State*, 805 N.E.2d 795, 796 (Ind. 2004) (holding that sentencing judgments that report only days spent in pre-sentence confinement and fail to expressly designate credit time earned shall be understood by courts and by the DOC automatically to award the number of credit time days equal to the number of pre-sentence confinement days and, applying this presumption, the defendant's sentencing judgment established that he was entitled to 140 days credit for time spent in pre-trial confinement plus 140 days of credit time).

[23]   In summary, Rudisel previously received credit for 104 days for actual time served. The presumption from *Robinson* indicates that the court also awarded Rudisel 104 days of credit time. The September 4, 2014 order sentenced Rudisel to two and one-half years "with credit for 5 actual days served in the Vigo County Jail from August 31, 2014 to September 4, 2014." Appellant's Appendix at 72. Applying the presumption from *Robinson*, Rudisel was entitled to 109 days for incarceration plus 109 days of credit time for a total credit of 218 days. Thus, at the time of the September 2014 order, Rudisel had a total of

218 days of time served and good time credit.[5] The court's September 4, 2014 order sentenced her to the Department of Correction for two and one-half years. The length of time the court sentenced Rudisel to the DOC (2.5 years) plus her jail time credit and credit time (218 days) equals approximately 1,130 days, which is in excess of three years and exceeds the maximum sentence for a class D felony. *See* Ind. Code § 35-50-2-7. Accordingly, we reverse the trial court's sentencing order and remand with instructions to sentence Rudisel within the statutory limit. *See McAllister v. State*, 913 N.E.2d 778, 783 (Ind. Ct. App. 2009) (reversing and remanding with instructions to award the correct credit time).

[24] With respect to Rudisel's argument that the September 2014 abstract of judgment indicates that she serve 180 days in community corrections, we observe that the abstract of judgment indicates "Comm. Corr: 180 Days" under the heading "SENTENCE," but the sentencing order does not refer to community corrections or 180 days and the court did not refer to community corrections or 180 days at the hearing when it imposed the sentence. Appellant's Appendix at 73. If the trial court intended to impose a sentence of 180 days of community corrections, such a sentence would render Rudisel's total sentence further in excess of three years than the excess explained above.

---

[5] This amount does not include any other credit time that Rudisel may have earned. On appeal, Rudisel does not develop an argument that she was incarcerated for any period of time other than the 104 days.

We remand with instructions to impose a sentence that accounts for the 218 days of credit time and does not exceed the maximum sentence.

### *Conclusion*

[25] For the foregoing reasons, we reverse and remand with instructions to sentence Rudisel to a term that considers the applicable credit time and does not exceed the maximum sentence.

[26] Reversed and remanded.[6]

Crone, J., and Pyle, J., concur.

---

[6] We acknowledge a motion to dismiss with an attached, undated and unsigned abstract of judgment filed with this Court by the appellant on April 13, 2015 and entered on the docket on April 17, 2015, and note that the Court of Appeals acquired jurisdiction on the date the trial court issued its notice of completion of clerk's record. *See* Ind. Appellate Rule 8 ("The Court on Appeal acquires jurisdiction on the date the Notice of Completion of Clerk's Record is noted in the Chronological Case Summary."). The notice of completion of clerk's record was filed on December 10, 2014 and entered on the docket on December 22, 2014. In *Jernigan v. State*, 894 N.E.2d 1044, 1046 (Ind. Ct. App. 2008), this Court held that the policy underlying the rule is to facilitate the efficient presentation and disposition of the appeal and to prevent the simultaneous review of a judgment by both a trial and appellate court. Here, the policy behind the acquisition of jurisdiction by the Court of Appeals may have been violated as both the trial court and this Court may have simultaneously reviewed the judgment at issue. For this reason, by separate order, we deny the motion to dismiss.