## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 10 2019, 10:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.G., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner.* | July 10, 2019 <br><br> Court of Appeals Case No. 19A-JV-181 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Gary Chavers, Magistrate <br><br> Trial Court Cause No. 49D09-1809-JD-1078 |

**Najam, Judge.**

# Statement of the Case

[1] J.G. appeals the juvenile court's award of guardianship over him to the Department of Correction after the court adjudicated J.G. a delinquent on three counts of armed robbery, each as a Level 3 felony when committed by an adult. J.G. raises a single issue for our review, namely, whether the juvenile court abused its discretion when it awarded guardianship over him to the Department of Correction. We affirm.

# Facts and Procedural History

[2] In mid-August of 2018, when he was fifteen years old, J.G. sold marijuana to three other juveniles near Arsenal Tech High School. The three juveniles and J.G. then began to smoke the marijuana together. Shortly thereafter, several other juveniles joined J.G. and, with J.G.'s assistance, robbed the first three juveniles at gunpoint. As the perpetrators were leaving the scene, J.G. told the first three juveniles to not say anything to anyone "or they would be shot." Appellant's App. Vol. II at 41 (capitalization removed). Indianapolis Metropolitan Police Department officers arrested J.G. and his accomplices shortly thereafter, and at least one of the victims changed schools out of fear of being "kill[ed]" for having spoken "to the police." *Id.* at 71.

[3] While detained and awaiting his denial hearing before the juvenile court, J.G. had five reported incidents of poor behavior. One incident "was for refusal to follow direction of staff." *Id.* at 68. Another incident was for "an altercation with another resident," which resulted in J.G. "trying to get away from the

other resident who wanted to fight him." *Id.* Following a fact-finding hearing in November of 2018, the juvenile court entered true findings on the State's allegations that J.G. had committed three acts of armed robbery, each as a Level 3 felony when committed by an adult.

[4] Prior to the dispositional hearing, J.G. underwent a psychological evaluation with Dr. Jim L. Dalton. Following that evaluation, Dr. Dalton stated that, given the "serious and dangerous" actions underlying the juvenile court's true findings, "[i]t would be understandable if the Court deems it necessary to remove [J.G.] from the community . . . ." *Id.* at 105. Further, J.G.'s predispositional report stated that, when he was thirteen years old, J.G. had been alleged to have committed battery, as a Class A misdemeanor when committed by an adult, which allegation was closed without a fact-finding hearing after J.G. failed to complete the offered services. The predispositional report also stated that, on a different occasion when he was thirteen, J.G. had been alleged to have committed battery, as a Class B misdemeanor when committed by an adult, which allegation was also closed without a fact-finding upon J.G.'s successful completion of offered services. The predispositional report also identified J.G. as having a "[h]igh risk to re-offend." *Id.* at 124.

[5] The State recommended that guardianship over J.G. be awarded to the Department of Correction so that he would have a "secure and structured setting" and no longer "pos[e] a threat to the community and himself." *Id.* at 125. Following the dispositional hearing, the juvenile court adopted the State's

recommendation and awarded guardianship over J.G. to the Department of Correction. This appeal ensued.

## Discussion and Decision

[6] J.G. challenges the juvenile court's order that he be placed in the wardship of the Department of Correction. As the Indiana Supreme Court has explained:

> The specific disposition of a delinquent is within the juvenile court's discretion, to be guided by the following considerations: the safety of the community, the best interests of the child, the least restrictive alternative, family autonomy and life, freedom of the child, and the freedom and participation of the parent, guardian, or custodian. We reverse only for an abuse of discretion, namely a decision that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.

*K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006) (citations and quotation marks omitted).

[7] We cannot say that the juvenile court abused its discretion when it awarded guardianship over J.G. to the Department of Correction. J.G. participated in the armed robbery of three other juveniles; he warned those juveniles not to tell anyone about the robbery or they would be shot; one of his victims changed schools out of fear of retaliation for having gone to the police; during J.G.'s pretrial detention, he had five reported incidents of misbehavior, including failing to follow directions and engaging in altercations with others; his psychologist supported J.G.'s removal from the community based on J.G.'s

dangerous behavior; and the predispositional report assessed J.G. as having a high risk of reoffending. We also note that, while no fact-finding hearings were held on the State's two prior battery allegations against J.G., those allegations were dismissed only after mixed results from J.G. in offered services, which suggests, in support of the juvenile court's judgment here, that less-restrictive options than placement with the Department of Correction would not be successful.

[8] J.G.'s arguments on appeal are merely requests for this Court to disregard the evidence most favorable to the juvenile court's judgment and, instead, consider only the evidence that J.G. considers favorable. But we are not at liberty to reverse the juvenile court's exercise of its discretion simply because we might have reached a different result on the same evidence. *See K.S.*, 849 N.E.2d at 544. J.G.'s argument on appeal is contrary to our standard of review, and, under the proper standard, we cannot say that the juvenile court abused its discretion. Accordingly, we affirm the juvenile court's judgment.

[9] Affirmed.

Baker, J., and Robb, J., concur.