## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 12 2019, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy P. Gooch
Chief Public Defender,
Hendricks County
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.W.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner.* | September 12, 2019<br><br>Court of Appeals Case No.<br>19A-JS-468<br><br>Appeal from the Hendricks<br>Superior Court<br><br>The Honorable Karen M. Love,<br>Judge<br><br>Trial Court Cause No.<br>32D03-1810-JS-205 |

**Mathias, Judge.**

[1]     J.W. appeals the Hendricks Superior Court's dispositional order following his admission to the delinquent act of truancy. He presents one issue for our

review: whether the juvenile court abused its discretion in ordering J.W. placed in the custody of White's Residential Treatment Facility ("White's"). We affirm.

## Facts and Procedural History

J.W. is a sixteen-year-old boy in the care of his father. He was enrolled in tenth grade at Plainfield High School ("PHS") during the 2018–2019 academic school year, when the events giving rise to the instant case occurred.

Previously, J.W.'s history with the juvenile justice system was limited to one delinquency action for truancy.[1] That action was based on J.W.'s twenty-two unexcused absences during the 2017–2018 school year. Appellant's App. p. 21. J.W. admitted to the offense in April 2018 and was placed on four months of probation. *Id.* He was discharged from probation on August 13, 2018. *Id.*

Shortly after, on August 29, PHS administrators, Hendricks County prosecutor, and J.W.'s father met to discuss the matter of J.W.'s school attendance in the new school year. J.W. did not attend this meeting. Then on September 13, J.W.'s father and the prosecutor met again, this time with J.W. present. After the second meeting, J.W. accumulated two more unexcused absences. As of September 28, J.W. had eighteen unexcused absences from PHS. Appellant's App. p. 20.

---

[1] This initial delinquency action for truancy was filed under cause number 32D03-1702-JD-48.

[5] On October 19, 2018, the State filed a petition alleging delinquency against J.W. based on the status offense of truancy. The petition alleged that J.W. failed and refused to attend school and needed "care, treatment or rehabilitation that he would not receive without the coercive intervention of the court." Appellant's App. pp. 14–15. J.W. was then expelled from PHS for the remainder of the semester due to his failure to attend. Tr. pp. 17, 30.

[6] A preliminary inquiry report prepared by probation officer Rebecca Schrock ("Schrock") was also filed on October 19. Appellant's App. pp. 20–25. The report revealed that J.W.'s father had no criminal history. *Id.* at 22. J.W.'s two older brothers had previously been placed on probation for truancy. *Id.* at 22–23. The probation department recommended that J.W. be placed on probation for one year subject to conditions including compliance with Cross Systems of Care Coordination ("CSCC"). *Id.* at 24–25. Possible CSCC services identified in the report included home and family therapy, tutoring, and social mentorship. *Id.*

[7] A pre-trial conference before the juvenile court was held on December 10. J.W.'s father appeared, but J.W. did not. Tr. p. 20. At that time, probation officer Schrock amended her recommendation and stated that J.W. should be placed in a residential setting as soon as possible. Tr. p. 21. The juvenile court continued the conference to that afternoon to allow J.W. to appear, which he did. *Id.* at 25. The juvenile court informed J.W. that it was considering placing him in a residential facility based on Schrock's recommendation and on J.W.'s failure to appear that morning. *Id.* at 26.

[8] J.W. returned to PHS the next semester on January 7, 2019. Only four weeks passed before he again appeared before the juvenile court on February 4. During that time, J.W. was absent from school on two more occasions. Tr. p. 42. The juvenile court accepted J.W.'s admission of truancy and found him to be a delinquent child. *Id.* at 54. J.W. was placed on probation for eight months and ordered to complete residential programming at White's in Wabash County. *Id.* J.W. filed his notice of appeal on February 28.

## Discussion and Decision

[9] J.W. argues that the juvenile court abused its discretion by ordering him into White's residential treatment program. Appellant's Br. at 7. We reverse a dispositional order only for abuse of discretion, because the placement of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court. *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006). An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[10] J.W. contends that, by placing him at White's, the juvenile court failed to consider the statutory directive to select the least restrictive placement. Appellant's Br. at 10. Specifically, J.W. argues that the juvenile court's disposition interfered with family autonomy, disrupted family life, imposed restraint on his freedom, and neglected to provide a reasonable opportunity for participation by his father. *Id.* Though we acknowledge the disruptive effect of

the juvenile court's order, J.W. has not demonstrated that the court's order is inconsistent with J.W.'s best interest.

[11] Indiana Code section 20-33-2-4 makes compulsory school attendance for children under age eighteen. Failure or refusal to comply with this section constitutes the delinquent act of truancy under Indiana Code section 31-37-2-3. A juvenile court may intervene to coerce a truant child to attend school regularly, provided that the court's intervention is consistent with the safety of the community and the best interest of the child. To wit:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> >
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

I.C. § 31-37-18-6. In other words, when it intervenes, a juvenile court need not order the least restrictive disposition if a more restrictive–or even more disruptive–solution better addresses the safety of a child's community and the child's best interest.

[12] J.W. argues that because his attendance record improved in January 2019, the juvenile court erred when it disregarded less restrictive dispositions in favor of placement at White's. Appellant's Br. at 10. Juvenile courts have a range of dispositional options for children in the juvenile justice system, including supervision by a probation department and outpatient treatment under Indiana Code section 31-37-19-5, or residential treatment and removal from the child's home under Indiana Code section 31-37-19-6. As a result of his twenty-two unexcused absences during the previous school year, J.W. had already once been adjudicated a delinquent child and completed four months of probation. Appellant's Br. at 5. By February 4, 2019, J.W. had twenty unexcused absences. Tr. p. 42; Appellant's App. p. 17. These absences represented continued delinquent behavior in the new school year at approximately the same level as in the prior school year. In this context, the juvenile court reasonably concluded that a disposition harsher than probation was appropriate for J.W.'s treatment. It was therefore not clearly erroneous for the juvenile court to require J.W. to be schooled at White's for the remainder of the 2018–2019 school year.

[13] J.W. further argues that the juvenile court's order inappropriately interfered with his family's autonomy because White's is located several hours from his home in Hendricks County. Appellant's Br. at 11. We have previously addressed this issue in the case of a juvenile court that placed a child at an Arizona residential facility instead of a similar, local facility. *E.M.W. v. State*, 762 N.E.2d 1283 (Ind. Ct. App. 2002). Due to the distance of E.M.W.'s placement, reasonable opportunity for parental participation as recognized by Indiana Code section 31-37-17-4 was diminished. *Id.* at 1285. We found that this opportunity "need only be provided if consistent with the safety and best interest of the child and community." *Id.* at 1286. Because the juvenile court's decision was based on the out-of-state facility's higher rate of success providing the type of treatment and rehabilitation services E.M.W. needed, and thus was in E.M.W.'s best interest, the placement was within the juvenile court's discretion despite its distance and the disruption it may have caused E.M.W.'s family. *Id.*

[14] We take seriously J.W.'s contention that his placement at White's puts a strain on J.W.'s father, who is a single parent. Appellant's Br. at 11. Our legislature recognizes the importance of family and children in society, and accordingly we caution the State against justifying the need for restrictive placement of juveniles on the work schedules of their parents, as it did with J.W., his siblings,

and their father.[2] Nevertheless, in its placement order, the juvenile court appropriately considered White's success in providing the services J.W. needed, including support and counseling available after J.W. completes the residential program. Tr. p. 48. As for the opportunity for J.W.'s father to participate, White's was willing to allow J.W.'s father to participate in services by telephone if the distance prohibited him from traveling. Tr. pp. 55, 57.

[15] The juvenile court treated J.W. as a person "in need of care, protection, treatment, and rehabilitation." I.C. § 31-10-2-1. Accordingly, its dispositional order is consistent with J.W.'s best interest and does not constitute an abuse of discretion. Affirmed.

Robb, J., and Pyle, J., concur.

---

[2] "J.W. needs a solid foundation that is unavailable to him at home due to his father's work hours. If J.W. does not manage to find a way to gain that foundation, J.W. will continue down his current path and the path of his brothers…" Appellee's Br. at 10.