## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 11 2019, 10:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine N. Worman
Worman Legal
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

L.E.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 11, 2019

Court of Appeals Case No.
19A-JV-1680

Appeal from the
Vanderburgh Superior Court

The Honorable
Brett J. Niemeier, Judge

The Honorable
Renee A. Ferguson, Magistrate

Trial Court Cause Nos.
82D04-1812-JD-2339
82D04-1902-JD-233

**Vaidik, Chief Judge.**

# Case Summary

[1] L.E. appeals the juvenile court's order committing him to the custody of the Indiana Department of Correction (DOC). We affirm.

# Facts and Procedural History

[2] In January 2019, sixteen-year-old L.E. was adjudicated a delinquent for theft, a Class A misdemeanor if committed by an adult; possession of a controlled substance, a Class A misdemeanor if committed by an adult; possession of marijuana, a Class B misdemeanor if committed by an adult; public intoxication, a Class B misdemeanor if committed by an adult; and criminal mischief, a Class B misdemeanor if committed by an adult. L.E. was placed on probation and ordered to be on home detention with electronic monitoring.

[3] Less than three weeks later, while on home detention, L.E. removed his electronic-monitoring bracelet. Thereafter, the State filed a delinquency petition alleging that L.E. committed escape, a Level 6 felony if committed by an adult. On February 8, L.E. admitted that his conduct constituted escape. L.E.'s attorney argued that he should stay on home detention so that he can "assist with his Grandmother" and be there for the birth of his child (due in June). The probation department recommended that L.E. be placed on the Community Service Platoon (CPS) at the Southwest Indiana Regional Youth Village. The juvenile court so ordered.

[4]  In March, the juvenile court held a review hearing. L.E.'s probation officer reported that L.E. had "completely struggled with the CPS program," "destroyed property within the CPS program," and "made very little progress." Tr. p. 21. When asked by the court which property L.E. destroyed, his probation officer explained, "He flipped tables and some chairs and basically destroyed the book shelves." *Id.* at 22. The juvenile court warned L.E. that if this type of behavior continued, "I'm sending you to the Department of Correction—prison." *Id.* At that time, however, the juvenile court ordered that L.E. remain at the Youth Village to see if the court's warning would lead L.E. "to realize the importance of controlling himself." *Id.* at 25.

[5]  In May, the juvenile court held another review hearing. L.E.'s probation officer reported that "[t]hings just generally haven't been going well." *Id.* at 28. She explained that there was recently an incident where L.E. "went off campus and was attempting to get cigarettes and a lighter from . . . workers at Wabash foods." *Id.* L.E.'s probation officer recommended that he remain at the Youth Village, and the juvenile court agreed.

[6]  In June, the State filed a motion alleging that L.E.'s "placement is no longer suitable due to his continued behavioral issues and defiance." Appellant's App. Vol. II p. 132. The State also noted that L.E. had not made any progress since he was admitted to the Youth Village in February. At the hearing on the State's motion to modify, L.E. admitted that his placement at the Youth Village was no longer available and that he did not make progress in that program. L.E.'s probation officer recommended that L.E. be placed at the Youth Care Center

for a ninety-day secure detention. L.E.'s attorney emphasized that L.E. is expecting a child and argued that he should be allowed "to serve his time on home detention," or in the alternative, "some sort of split between the two. The first portion at [the Youth Care Center]. If his behavior is appropriate at [the Youth Care Center] and he earns the privilege, then allow him to step down to home detention." Tr. pp. 33-34. The juvenile court ordered that L.E. be placed at the Youth Care Center for ninety days, but said that after forty-five days, if L.E. followed all the rules, the court would consider putting L.E. on home detention for his final thirty days. *See id.* at 35. The court acknowledged that this meant that L.E. would not be able to see the birth of his baby.

[7] In July, the State filed another motion alleging that L.E.'s "placement is no longer suitable due to his continued behavior issues and defiance. [L.E.] is regressing since his placement at the Youth Care Center by receiving a considerable amount of incident reports and lock downs since his placement [in June]." Appellant's App. Vol. II p. 136. The State also noted, "The Youth Care Center is requesting [L.E.'s] removal at this time." *Id.* At the hearing on the State's motion, L.E.'s probation officer recommended that he be placed at the DOC because L.E. has been given "several opportunities throughout probation and he has been unsuccessful." Tr. p. 44. The State agreed with the probation department's recommendation and reiterated "the number of opportunities that [L.E.] has been given in alternative placements and he continues to escalate, and . . . he has continued to escalate to the point where it is a grave concern that he is taunting staff at the [Youth Care Center]." *Id.* at

45. L.E.'s attorney argued that the juvenile court "keep the Department of Correction[] under advisement . . . [and] order [L.E.] back in another two weeks and see if he's maintained" good behavior. *Id.* at 55. L.E.'s attorney emphasized L.E.'s desire "to be here for his Grandma" and "his son." *Id.* At the end of the hearing, the juvenile court said that it "examined [L.E.'s] delinquency history [and] looked at the rehabilitative measures that have been tried with [L.E]," and in the court's mind, "[L.E.'s] been given ample opportunity to show that he's capable of rehabilitation and thereby being an appropriate member to keep in our community. But he has failed to do that." *Id.* The juvenile court ordered L.E. committed to the DOC.

[8] L.E. now appeals.

# Discussion and Decision

[9] L.E. contends that the juvenile court abused its discretion when it concluded that he should be committed to the DOC. The disposition of a juvenile is within the juvenile court's discretion. *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006). We will reverse a juvenile disposition only upon a showing that the juvenile court abused its discretion. *Id.* An abuse of discretion occurs when the disposition is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[10]     Indiana Code section 31-37-18-6 guides the court's disposition of a juvenile. In part, the statute states, "If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that is in the least restrictive (most family like) and most appropriate setting available." Ind. Code § 31-37-18-6. L.E. claims that the juvenile court's disposition violates Section 31-37-18-6 because his commitment to the DOC is not the least restrictive option available. L.E. contends that the juvenile court "failed to consider the special circumstances surrounding [his] life" before ordering him into the custody of the DOC. Appellant's Br. p. 10.

[11]     The record shows that L.E. was given numerous opportunities to rehabilitate himself. Specifically, L.E. was offered and failed in three different placements, including: home detention with electronic monitoring, the Youth Village, and the Youth Care Center. First, while on home detention, L.E. committed a new criminal offense—escape—by removing his electronic-monitoring bracelet. Then, while placed at the Youth Village, L.E. routinely failed to comply with the conditions of his placement. Finally, while placed at the Youth Care Center, L.E.'s behaviors escalated, and he began taunting staff. L.E. has demonstrated that he is unable to do what is required of him without being in a heavily structured and supervised environment. To the extent that L.E. argues that the juvenile court did not consider the "special circumstances" surrounding his life, we disagree. L.E.'s attorney repeatedly argued that L.E.'s grandmother and child should be considered when determining his placement. Because the record shows that the "special circumstances" surrounding L.E.'s life were

before the juvenile court, we will not second guess its reasons for committing L.E. to the DOC.  Accordingly, the juvenile court did not abuse its discretion when it committed L.E. to the custody of the DOC.

[12] Affirmed.


Najam, J., and Tavitas, J., concur.