## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 10 2020, 10:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery Haupt
Law Office of Jeffery Haupt
South Bend, Indiana

ATTORNEY FOR APPELLEE

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

C.H.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

June 10, 2020

Court of Appeals Case No.
19A-JV-2916

Appeal from the St. Joseph Probate Court

The Honorable Jason A. Cichowicz, Judge

The Honorable Graham C. Polando, Magistrate

Trial Court Cause Nos.
71J01-1901-JD-34
71J01-1903-JD-93
71J01-1903-JD-95
71J01-1903-JD-96
71J01-1908-JD-288

**Bradford, Chief Judge.**

# Case Summary

[1] In 2019, C.H. was adjudicated delinquent for what would be two counts of Level 6 felony fraud, two counts of Class A misdemeanor theft, and Class A misdemeanor resisting law enforcement if committed by an adult in five different causes. The juvenile court ultimately ordered that C.H. be placed in the Indiana Department of Correction ("DOC"). C.H. contends that the juvenile court abused its discretion in this regard. We affirm.

# Facts and Procedural History

[2] On January 16, 2019, while on the campus of the University of Notre Dame, C.H. stole credit/debit cards, a university identification card, and Apple AirPods belonging to associate professor Michael Niemier. C.H. also stole credit cards belonging to James Fraleigh. Once in possession of the credit cards, C.H. purchased items totaling $963.98 using Niemier's credit cards and $1479.68 using Fraleigh's credit cards. On January 21, 2019, C.H. attempted to purchase a watch from a bookstore using a credit card. Because C.H. matched the description of the person who had fraudulently purchased items on January 16, 2019, the manager asked to see C.H.'s identification, which caused C.H. to leave the store. After police were notified, officers apprehended C.H. and discovered credit cards and identification inside C.H.'s pocket belonging to Niemier, Fraleigh, Luis Ruuska, and Kevin Casault. That same day, Ruuska and Casault had had their property stolen from their offices. As a result of C.H.'s actions, in January of 2019 and March of 2019, the State filed a total of

six delinquency petitions. In January of 2019, C.H. admitted to what would be Class A misdemeanor theft if committed by an adult in Cause Number 71J01-1901-JD-34 ("Cause No. JD-34"). On March 27, 2019, pursuant to an agreement, C.H. agreed to admit to what would be Level 6 felony fraud in Cause Number 71J01-1903-JD-93 ("Cause No. JD-93"), Class A misdemeanor theft in Cause Number 71J01-1903-JD-95 ("Cause No. JD-95"), and Level 6 felony fraud in Cause Number 71J01-1903-JD-96 ("Cause No. JD-96") if committed by an adult, and the State agreed to dismiss the remaining delinquency petitions and charges. On April 16, 2019, the juvenile court ordered, *inter alia,* that C.H. be placed on strict and indefinite probation; subjected to random home visits; obey all city, state, and federal laws; participate and successfully complete a day reporting program; participate in the home-detention program not to exceed ninety days; attend school; and obtain and maintain a part-time job.

[3] On August 9, 2019, South Bend Police Officer Andrew Hines was surveilling a residence that he had reason to believe was frequented by two juveniles wanted on felony-arrest warrants. While surveilling the residence, Officer Hines also discovered two stolen vehicles parked at the residence. After confirming that the vehicles were stolen, Officer Hines observed five juveniles attempting to enter one of the vehicles. Officer Hines activated his emergency lights in an attempt to detain the juveniles, but they fled back inside the residence. Officer Hines observed C.H. standing on the rooftop porch of the residence and ordered him to stay where he was, but C.H. fled back inside the residence. At some point, a

SWAT team arrived and formed a perimeter around the residence. After two hours, the SWAT team gassed the residence, and C.H. exited.

[4] On August 19, 2019, the State filed a delinquency petition in Cause Number 71D01-1908-JD-288 ("Cause No. JD-288") alleging that C.H. committed what would be Class A misdemeanor conversion and Class A misdemeanor resisting law enforcement if committed by an adult. Following a September 30, 2019, factfinding hearing, C.H. was found to be delinquent for what would be resisting law enforcement if committed by an adult. On November 12, 2019, a hearing was held regarding the disposition of Cause No. JD-288 and the modification of Cause Nos. JD-34, JD-93, JD-95, and JD-96. At the conclusion of the hearing, the juvenile court ordered C.H. to be placed in the DOC.

# Discussion and Decision

[5] C.H. contends that the juvenile court abused its discretion by ordering placement in the DOC.

> The specific disposition of a delinquent is within the juvenile court's discretion, to be guided by the following considerations: the safety of the community, the best interests of the child, the least restrictive alternative, family autonomy and life, freedom of the child, and the freedom and participation of the parent, guardian, or custodian. We reverse only for an abuse of discretion, namely a decision that is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.

*K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006) (cleaned up).

[6] Specifically, C.H. asserts that the juvenile court abused its discretion in failing to order a more rehabilitative placement for him before ordering DOC placement. We conclude, however, that the juvenile court's decision was reasonable given the facts and circumstances before it. First, the juvenile court had already attempted to provide C.H. with less-severe alternatives through strict and formal probation, a day-reporting program, and home detention. Not only had C.H. had myriad unexcused absences while in the day-reporting program, but he had also been disrespectful to staff, disruptive to the class, and behaved inappropriately when he attended. While on home detention, C.H. had had multiple location violations. Put another way, C.H. had been given ample opportunities to prove that he could follow the rules of society under less-restrictive placements but had failed. Moreover, the circumstances of C.H's delinquent behavior became more egregious over time. While C.H.'s theft of multiple credit cards and subsequent purchases of nearly $2500.00 worth of items are by no means trivial, the circumstances pale in comparison to the circumstances of his most recent act. In Cause No. JD-288, C.H. defied the orders of law enforcement to the point that a SWAT team had to gas the residence in order to apprehend him. We are also concerned that C.H. was found at a residence known by law enforcement to be frequented by juveniles wanted on felony-arrest warrants for armed robbery and attempted murder, one of whom was also present at the residence the same day as C.H. Finally, the

juvenile court considered less-restrictive placements but believed they would not be effective, stating,

> What is more important to me is that we now have five delinquency cases in the span of about eight months. This last offense would only have been a misdemeanor if committed by an adult. But I do find that it is by misdemeanor standards extraordinarily aggravated. It demonstrates a profound disrespect for authority and a complete failure to be restrained by anyone from what [C.H.] feels like doing at the moment. And that would give me pause about less restrictive options if this were his first offense and it isn't. This most recent case is his ninth delinquency referral. And as I say, five delinquency cases in about eight months. So certainly, I recognize the obligation to impose the least restrictive option. But it is clear that those less restrictive options require a little bit of cooperation from [C.H.] which is not going to be present and therefore is going to be a waste and more importantly a danger to the community.

Tr. Vol. II pp. 59–60. Given the record, we agree with the juvenile court and therefore C.H. has failed to establish that the juvenile court abused its discretion by ordering that he be placed in the DOC.

[7] The judgment of the juvenile court is affirmed.

Baker, J., and Pyle, J., concur.