# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**RUSSELL L. BROWN**
**MICHAEL P. MAXWELL**
Clark, Quinn, Moses, Scott & Grahn, LLP.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**RICHARD W. LORENZ**
Hickam & Lorenz, PC
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LEWIS J. RICHARDSON, and | ) | |
| LAUREL RICHARDSON, | ) | |
| | ) | |
| Appellants-Petitioners, | ) | |
| | ) | |
| vs. | ) | No. 60A01-1106-PL-228 |
| | ) | |
| BOARD OF COMMISSIONERS OF | ) | |
| OWEN COUNTY, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE OWEN CIRCUIT COURT
The Honorable Teresa D. Harper, Special Judge
Cause No. 60C01-0909-PL-567

**March 30, 3012**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

Today we consider whether the petitioners were aggrieved parties and had standing to challenge the County Commissioners' decision to vacate a portion of a roadway that provided an access to a cemetery where their daughter was buried. We hold that the petitioners did not suffer a special or unique injury above that which the general public sustained. Moreover, the evidence established that there were alternate entrances to the cemetery so the petitioners were not hindered within the meaning of the statute from gaining access to their daughter's grave. Thus, the petitioners were not entitled to challenge the County Commissioners' decision to vacate a portion of the roadway.

Appellants-petitioners Lewis and Laurel Richardson (collectively, the Richardsons), appeal the trial court's judgment that vacated a portion of a roadway, in favor of the Board of Commissioners of Owen County (Commissioners). More particularly, the Richardsons maintain that the trial court erred in determining that they were not aggrieved parties and, therefore, could not appeal the vacation ordinance under Indiana Code section 36-7-3-12(f).

We conclude that because the Richardsons are not abutting landowners to the vacated roadway, the trial court correctly determined that they lacked standing as an aggrieved party to remonstrate against the vacation of the roadway. In other words, the Richardsons have failed to demonstrate that they have sustained an injury that is unique or special to them.

Thus, we affirm the judgment of the trial court.

## FACTS

The Richardsons own burial rights for ten plots in Splinter Ridge Cemetery (Cemetery) in Owen County. Their daughter, Kirsten, is at the Cemetery.

Sometime in 2009, the Richardsons requested that the Cemetery be placed on the list of historic cemeteries. The Cemetery is located along the east side of Splinter Ridge Road (Splinter Ridge), which was, or is, a county road that appeared on the county maps and records for years. The records that the County maintained initially reflected that Splinter Ridge ran from Vandalia or Chapman Road in a southerly direction to a point known as Patricksburg Road.

However, as early as 1937, the road map that was submitted into evidence showed that Splinter Ridge appeared as a solid line, which meant there was a continuously maintained county road from Patricksburg Road to Fish Creek or about one third of its original length. The remainder of Splinter Ridge appeared as a dotted line, meaning that the county roadbed had been abandoned for the rest of the way north to Vandalia.

In 1997 or 1998, Junior Sips had inherited a large portion of the property just north of the Cemetery on both sides of Splinter Ridge. At some point, without the permission of any county authority, Sips installed a gate across Splinter Ridge just north of the property line to the Cemetery.

On May 1, 2009, Sips and Danzer Forest Land, Inc., (Danzer), as owners of all the property adjacent to a portion of Splinter Ridge, filed a petition to permanently vacate the adjacent portion of the road. It is undisputed that Sips and Danzer were the only

3

landowners abutting the portion of the road sought to be vacated. In relevant part, the petition requested

> 4. [That the] roadway be permanently vacated as the same was in fact abandoned by [the] county approximately 60 plus years ago and has not been maintained by the County during that entire period of time and has not been used by the public as a roadway for the same period of time. In fact said roadway has generally disappeared and is not at all visible in many portions of the area petitioners are requesting be formally vacated.
>
> 5. The formal vacation of said section of roadway is in the public and economic interest of Owen County . . . in that it would not interfere with the flow of traffic as it has existed for the past 60 plus years, the clearing of timber, grading and reestablishment of a roadbed would be necessary for the road to actually be used by the public.
>
> . . .
>
> 7. The formal vacation of the roadway would not change the circumstances of any other landowner aside from the petitioner or negatively impact the traffic flow and pattern of transportation in Owen County from what it has been for the past 60 plus years.

Appellants' App. p. 105-06.

Thereafter, the Richardsons filed a request with the Commissioners, asking for the removal of the gate that Sips had installed, and that overgrown portions of the road be repaired. At the Commissioners' meeting on May 4, 2009, the Richardsons presented argument about the importance of reopening the entire length of Splinter Ridge because of their ownership in the Cemetery plots. The Sips's attorney then addressed the Commissioners regarding the pending application to vacate a portion of Splinter Ridge and presented Sips's testimony in response to the Richardsons' request.

The evidence established that Sips, who was born in 1939, remembered the road being an unimproved path when he was approximately ten years old. The County had not

4

maintained the road since around 1950, and Sips testified that he and his family had graded it and placed gravel on it for decades. The only house located on the road was Sips's father's former residence, which had not been occupied since the late 1990s. Sips testified that the road was impassable in much of its length north of the Cemetery. Moreover, a bridge over a nearby creek was no longer there.

Sips reported that there were at least two alternate routes to access the Cemetery. In fact, Sips stated that no one had accessed the Cemetery by way of Splinter Ridge for decades because a portion of it had been abandoned and overgrown. Various exhibits were presented to the Commissioners showing the roadway existing on a 1937 highway map and later maps showing the dotted line where the roadbed used to exist in 1950, 1972, and 2002. At the conclusion of the meeting, the Commissioners took the matter under advisement.

The petition to vacate was placed on the Commissioners' May 18th meeting agenda. At that meeting, Sips's counsel again offered to reiterate the evidence that was presented at the earlier meeting in response to the Richardsons' request. The Commissioners implicitly agreed to incorporate the prior evidence by reference and asked no further questions. Sips's counsel pointed out at the meeting that both parties had previously presented evidence that between 1950 and 1980, Splinter Ridge had completely dropped off the county road system.

The evidence established that the Richardsons were not landowners who abutted the road requested to be vacated. The Richardsons then presented evidence and argument

against the petition to vacate. The Richardsons maintained that they were entitled to oppose the petition because vacating the road would hinder public access to a church, school, or other public buildings or places. The Richardsons alleged that the gate had encouraged vandalism, littering, and loitering at the Cemetery, and that removing the gate and reopening Splinter Ridge would reduce the risk of further desecration to the Cemetery. Appellants' App. p. 89, 90, 120.

One of the commissioners pointed out that placing a bridge over the creek to access the Cemetery would cost anywhere from $500,000.00 to $1,000,000. The Richardsons' counsel suggested that the County was maintaining Splinter Ridge, but the highway superintendent indicated that Sips was the only person who was maintaining the roadbed.

After considering the evidence and argument, the Commissioners voted 3-0 to approve the vacation of the road. On August 17, 2009, the Commissioners signed Ordinance No. 2009-15, vacating the requested portion of Splinter Ridge.

On September 16, 2009, the Richardsons filed their complaint in the trial court requesting damages and an order to set aside the vacation ordinance. At a hearing on July 23, 2010, the Commissioners filed a motion to dismiss the Richardsons' complaint, claiming that they had failed to follow proper procedures, including the filing of an appeal bond under Indiana Code section 36-2-2-28. Moreover, the Commissioners maintained that the Richardsons could not appeal the decision because they are not aggrieved persons as defined in Indiana Code section 36-7-3-12(f).

6

On May 20, 2011, the trial court dismissed the Richardsons' complaint, based on a determination that the Richardsons are not aggrieved persons under the statute and, therefore, are not eligible to appeal. More particularly, the trial court ruled that

> The Richardsons do allege that they would be inconvenienced by the vacation, but they do not allege a special injury that would completely deprive them of access to their daughter's grave and their plots.
>
> Taking as true that the Richardsons own the plots and their daughter is buried in one of their plots, the evidence presented does not cut them off from those plots. An alternate entrance to the cemetery is available and the inconvenience of using the alternate interest is not a special injury.
>
> The Richardsons' injury falls under the doctrine of damnum absque injuria, which means that while they may have suffered damage, they were without legal injury. . . . Based on the pleadings and other evidence submitted by the Richardsons, the Court finds that they have not suffered a special injury.

### IV. Conclusion

> Based on the complaint, briefs, and other submissions by the Parties, the Richardsons did not suffer a special injury as defined by law and, therefore, cannot appeal the vacation ordinance under I.C. 36-7-3-12.

Appellants' App. p. 16-17. The Richardsons now appeal.

### DISCUSSION AND DECISION

### I. Standard of Review

Where, as here, the facts are not in dispute, the question of subject matter jurisdiction is a pure question of law and the trial court's decision should be reviewed de novo. H.D. v. BHC Meadows Hosp., 884 N.E.2d 849, 852 (Ind. Ct. App. 2008). Deference is not afforded to the trial court's conclusion because we evaluate the issues that are deemed questions of law. Bader v. Johnson, 732 N.E.2d 1212, 1216 (Ind. 2000).

7

Here, because the facts were undisputed and the trial court ruled on a pure question of law, namely, whether the Richardsons were aggrieved persons under Indiana Code section 36-7-3-12, we will apply a de novo standard of review as to the trial court's determination that the Richardsons cannot challenge the ordinance vacating a portion of Splinter Ridge.

## II. The Richardsons' Contentions

In addressing the issue as to whether the trial court's determination that the Richardsons were aggrieved parties and should be permitted to challenge the vacation ordinance, we quote, in part, from <u>McFarland v. Pierce</u>, 151 Ind. 546, 548, 45 N.E. 706, 706-07 (1897), where it was observed that

> The word 'aggrieved' . . . refers to a substantive grievance, a denial of some personal or property right or imposition upon a party of a burden or obligation. . . . [Citations omitted]. To be aggrieved is to have legal right the infringement of which by the decree complained of will cause pecuniary injury. [Citations omitted]. . . . The Appellees must have a legal interest which will be enlarged or diminished by the result of the appeal. [Citations omitted].

In this case, the Richardsons claim that they were entitled to challenge the vacation proceeding in accordance with Indiana Code section 36-7-3-12 and -13. Indiana Code section 36-7-3-12 provides that

(a) Persons who:

(1) own or are interested in any lots or parts of lots; and

8

(2) want to vacate all or part of a public way or public place in or contiguous to those lots or parts of lots;

may file a petition for vacation with the legislative body of:

(A) a municipality, if all or any part of the public way or public place to be vacated is located within the corporate boundaries of that municipality; or

(B) the county, if all or the only part of the public way or public place to be vacated is located outside the corporate boundaries of a municipality.

(b) Notice of the petition must be given in the manner prescribed by subsection (c). The petition must:

(1) state the circumstances of the case;

(2) specifically describe the property proposed to be vacated; and

(3) give the names and addresses of all owners of land that abuts the property proposed to be vacated.

(c) The legislative body shall hold a hearing on the petition within thirty (30) days after it is received. The clerk of the legislative body shall give notice of the petition and of the time and place of the hearing. . . .

. . .

(d) The hearing on the petition is subject to IC 5-14-1.5. At the hearing, any person aggrieved by the proposed vacation may object to it as provided by section 13 of this chapter.

(e) After the hearing on the petition, the legislative body may, by ordinance, vacate the public way or public place. The clerk of the legislative body shall furnish a copy of each vacation ordinance to the county recorder for recording and to the county auditor.

9

(f) Within thirty (30) days after the adoption of a vacation ordinance, any aggrieved person may appeal the ordinance to the circuit court of the county. The court shall try the matter de novo and may award damages.

Indiana Code section 36-7-3-13, states in relevant part that

A remonstrance or objection permitted by section 12 of this chapter may be filed or raised by any person aggrieved by the proposed vacation, but only on one (1) or more of the following grounds:

. . .

(3) The vacation would hinder the public's access to a church, school, or other public building or place.

In applying these statutes to the circumstances here, the evidence presented to the Board demonstrates that the northern 2/3 of Splinter Ridge has been closed and impassable for decades. Sips testified that there had been no traffic north of his parents' home since before 1950. Appellants' App. p. 73. Photographs of the road were submitted showing gravel on the path, while others showed a creek with no bridge traversing it, farm fields where the road ran in the past, and completely impassable areas that were overgrown with brush and trees. Id. at 107-19.

Sips also testified that the County had not maintained the road for years and that any gravel that was there had been placed on it by him or his family. Id. at 86. Ironically, the Richardsons' petition to reopen the road infers that the Richardsons recognized and appreciated that the road was impassable and would need significant remediation to restore it to any level of operation which would satisfy County and State specifications.

10

In essence, the County's abandonment and decades of non-use have disengaged this roadbed from the active county highway system. Indeed, the Richardsons' petition seeks to reopen the roadbed by removing the undergrowth, excavating an appropriate roadbed and surface, and building a bridge using specifications that are consistent with a highway servicing this area. However, we cannot say that the Richardson's petition is adequate to compel the Commissioners to build the new road and it does not serve as justification for opposing the vacation.

As discussed above, the Commissioners identified a number of alternative routes of travel to the Cemetery from the north and other directions. And there is no evidence demonstrating that the Richardsons have ever needed to use the overgrown, abandoned part of Splinter Ridge to access the cemetery where their daughter is buried and where the remainder of their plots are located.

In short, the Richardsons have continued to visit the gravesites without the availability of the specific route that they are seeking to reopen. The evidence demonstrates that the ability of the general public is not interfered or hindered anymore than it has been for the last five decades, or more. Finally, we note that the injury of which the Richardsons complain is not unique or special to them but rather is the same as the general public as a group. For all of these reasons, we conclude that the trial court properly dismissed the Richardsons' complaint.

The judgment of the trial court is affirmed.

DARDEN, J., and BAILEY, J., concur.

11