## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 12 2017, 9:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Christopher C. Wischer
Raymond P. Dudlo
Evansville, Indiana

ATTORNEYS FOR APPELLEES

Beth McFadin Higgins
Mount Vernon, Indiana

Jacob P. Weis
Poseyville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roy Defries, et al.,

*Appellants-Defendants,*

v.

Board of Commissioners of Posey County, et al.,

*Appellees-Plaintiffs*

April 12, 2017

Court of Appeals Case No.
65A05-1508-MI-1249

Appeal from the Posey Circuit Court

The Honorable James M. Redwine, Judge

The Honorable Robert R. Aylsworth, Special Judge

Trial Court Cause No.
65C01-1401-MI-18

**Altice, Judge.**

## Case Summary

This case revolves around a small piece of land in unincorporated Posey County known as South Road, which was dedicated as a public road nearly two centuries ago. In 2013, a group of adjacent landowners, made up of Donald and Virginia Alsop, Janice Heinlin, and Alvin and Jennifer Blaylock (collectively, the Petitioners), filed a petition asking the Board of Commissioners of Posey County (the Board) (collectively with the Petitioners, the Appellees) to vacate South Road. A competing group of landowners and nearby business owners, made up of Roy and Nancy DeFries, Indian Mound Farm, LLC, David Flanders, and Johnathan Scott[1] (collectively, Remonstrators), remonstrated. After a public hearing, the Board voted unanimously to grant the petition to vacate South Road and adopted an ordinance to that effect. The Remonstrators appealed to the Posey County Circuit Court, which affirmed the Board's decision. On appeal to this court, the Remonstrators raise a number of issues which we consolidate and restate as the following two:

> 1. Must the Board's decision be set aside due to its failure to hold a hearing within thirty days as required by Ind. Code § 36-7-3-12(c)?

> 2. Was the Board's decision to vacate South Road arbitrary, capricious, or an abuse of discretion?

---

[1] Remonstrators Roy and Nancy DeFries and Indian Mound Farm own land adjacent to South Road. Remonstrators Flanders and Scott are not adjacent landowners, but they own a business in nearby New Harmony.

[2] We affirm.[2]

## Facts & Procedural History

[3] South Road is located in unincorporated Posey County and runs east to west, abutting the southern boundary of the town of New Harmony. South Road is approximately 738.11 feet long and 41.5 feet wide and intersects on its west end with Main Street. The Alsops and Heinlin use a short paved or gravel portion of the west end of South Road as a driveway, and an outbuilding owned by Heinlin is located within the strip of land platted as South Road. East of this structure, the road gives way to dense underbrush and forest. There is no actual roadway on this portion of the land platted as South Road, and a ditch runs through part of the right-of-way. On its east end, the land platted as South Road dead-ends into the Blaylocks' back yard. South Road has never been maintained by the county for public travel and it is not listed on the state highway inventory for purposes of the allocation of road maintenance funding.

[4] The current petition to vacate is not the first legal proceeding involving South Road. In 1977, the Posey Circuit Court resolved a dispute between then-owners of the land adjacent to South Road, one of whom had erected obstructions on the land and claimed ownership through adverse possession. *Cook v. Rosebank Dev. Corp.*, 376 N.E.2d 1196, 1197 (Ind. Ct. App. 1978). The

_____

[2] We held oral argument in this matter on March 9, 2017, at DePauw University in Greencastle. We thank the students, faculty, and staff for their hospitality, and we commend counsel for the quality of their advocacy.

trial court found that South Road was a public road, rejected the claim of adverse possession, and ordered the defendants to remove all obstructions from the road and enjoined them from interfering with the use of South Road in the future. *Id.* at 1198-99. This court affirmed the trial court on appeal. *Id.* at 1200-01. The record also indicates that the Board denied a previous petition to vacate South Road in 2005.

[5]     The current petition to vacate South Road was filed on June 17, 2013, but hearing on the matter was delayed due to uncertainty as to whether South Road was a county road,[3] as well as the adjacent landowners' attempts to reach a settlement. In December 2013, Remonstrators Flanders and Scott filed another objection to the proposed vacation of South Road, this time also asserting that the Board lacked jurisdiction to rule on the petition due to its failure to hold a public hearing within thirty days as required by Ind. Code § 36-7-3-12(c). The matter proceeded to public hearing on December 17, 2013. At the conclusion of the hearing, the Board voted unanimously to grant the petition and signed an ordinance vacating South Road.

[6]     Indian Mound Farm and Roy and Nancy DeFries filed an appeal of the ordinance in the Posey Circuit Court. Shortly thereafter, Flanders and Scott filed a motion to intervene, which was granted. The parties submitted briefs and exhibits, and on July 27, 2015, the trial court issued its findings and

---

[3] It appears that the interested parties were initially uncertain as to whether South Road was located within the Town of New Harmony or in unincorporated Posey County.

judgment affirming the Board's decision to vacate South Road. This appeal ensued.

## 1. Timeliness of Public Hearing

[7] The Remonstrators first argue that the Board's decision must be set aside for lack of jurisdiction because the hearing on the petition to vacate South Road was untimely. "Where, as here, the facts are not in dispute, the question of subject matter jurisdiction is a pure question of law and the trial court's decision should be reviewed de novo." *Richardson v. Bd. Of Comm'rs of Owen Cnty.*, 965 N.E.2d 738, 742 (Ind. Ct. App. 2012), *trans. denied*.

[8] Ind. Code § 36-7-3-12(c) provides that a hearing on a petition to vacate a public way shall be held within thirty days after the petition was received. The parties do not dispute that the hearing in this case was held well outside this thirty-day timeframe. Indeed, the hearing was not held until approximately six months after the petition was filed. The parties disagree, however, on the effect of this delay on the Board's authority to issue a decision on the petition. The Remonstrators argue that the delay deprived the Board of jurisdiction to consider the petition to vacate, while the Petitioners and the Board argue that a timely hearing was not a jurisdictional prerequisite and that the delay was harmless.

[9] The Remonstrators cite no authority supporting their argument that a timely hearing is a jurisdictional prerequisite to the Board's consideration of a petition to vacate. Instead, they argue that "Indiana law does not favor vacating public

roads" and "actions vacating public roads require full and substantial compliance with the governing provisions of such vacations." *Appellants' Brief* at 13 (citing *Cook*, 376 N.E.2d at 1196).

[10]     Although not directly on point, we find our Supreme Court's decisions in *K.S. v. State*, 849 N.E.2d 538, 541 (Ind. 2006), and *In re Adoption of O.R.*, 16 N.E.3d 965 (Ind. 2014), to be instructive. In *K.S.*, the respondent in a proceeding to revoke juvenile probation sought to set aside his original delinquency adjudication based on a procedural error—the failure of the court to approve the filing of the delinquency petition. 849 N.E.2d at 541. The respondent characterized the defect as a jurisdictional one, which would leave the delinquency adjudication open to such a collateral attack. *Id.* In rejecting this argument, our Supreme Court noted that "[a]ttorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension. The fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction." *Id.* The court explained that "[*r*]*eal* jurisdictional problems would be, say, a juvenile delinquency adjudication entered in a small claims court, or a judgment rendered without any service of process." *Id.* at 542. The court noted that "[t]he question of subject matter jurisdiction entails a determination of whether a court has jurisdiction over the general class of actions to which a particular case belongs" and that the juvenile court had exclusive jurisdiction over cases involving juvenile delinquency. *Id.* Thus, the respondent's claim was one of

procedural error, not jurisdiction, and not a proper basis for a collateral attack. *Id.*

[11] In *O.R.*, the biological father of a minor child attempted to appeal an order granting an adoption petition filed by his daughter's guardians. 16 N.E.3d at 968. This court dismissed the appeal, concluding that it lacked jurisdiction because father's notice of appeal was not timely filed pursuant to Ind. Appellate Rule 9, which provides that the right to appeal "shall be forfeited" unless a notice of appeal is filed within thirty days of the entry of final judgment. On transfer, our Supreme Court acknowledged that it "ha[d] long taken the position that timely filing is a jurisdictional prerequisite to the consideration of an appeal." *O.R.*, 16 N.E.3d at 969. The court went on to explain, however, that it had subsequently made note of the "tendency in procedural law to treat various kinds of serious procedural errors as defects in subject matter jurisdiction" and held that its prior case law characterizing the untimely filing of a notice of appeal as a jurisdictional defect reflected that misapprehension. *Id.* at 970 (quoting *K.S.*, 849 N.E.2d at 541). The court reasoned that App. R. 9 uses the language of forfeiture, not jurisdiction, and that there is a crucial distinction between the two. *O.R.*, 16 N.E.3d at 970-71. A forfeiture means that a party has lost a right, while a lack of jurisdiction deprives a court of the authority to hear a case. *Id.* Thus, where a party has forfeited the right to appeal by failing to file a timely notice of appeal, the question becomes "whether there are extraordinarily compelling reasons why this forfeited right should be restored." *Id.* at 971. In that case, the court found that such reasons

existed based on father's attempts to perfect a timely appeal and the constitutional dimensions of the parent-child relationship. *Id.* at 972. *See also Hunter v. Ind. Dep't of Transp.*, 67 N.E.3d 1085, 1089 (Ind. Ct. App. 2016) (holding that former state employee's failure to timely file petition for judicial review of administrative order affirming his termination was not a jurisdictional error because the relevant statute was written "in terms of waiver and not subject matter jurisdiction"), *trans. pending*.

[12] The Remonstrators' arguments concerning the Board's jurisdiction reflect the tendency, noted by our Supreme Court in *K.S.* and *O.R.*, to treat certain types of procedural errors as defects in subject matter jurisdiction. The statute setting forth the thirty-day time limit for holding a public hearing makes no mention of jurisdiction—indeed, it does not even mention waiver or forfeiture for failure to hold a hearing within that timeframe. *See* I.C. § 36-7-3-12(c). We will not presume that I.C. § 36-7-3-12(c) sets forth a jurisdictional requirement in the absence of statutory language to that effect. *See Hancock Cnty. Rural Elec. Membership Corp. v. City of Greenfield*, 494 N.E.2d 1294, 12-95-97 (Ind. Ct. App. 1986) (construing the word "shall" appearing in a statute setting a ninety-day time limit for issuing a ruling on a petition to change a utility service area as directory rather than jurisdictional in the absence of statutory language providing that a timely ruling was a jurisdictional requirement and where the time limit "d[id] not go to the essence of the statutory purpose"), *trans. denied*.

[13] We further conclude that any error resulting from the Board's failure to hold the hearing within thirty days in accordance I.C. § 36-7-3-12(c) was harmless

because it did not affect the substantial rights of the parties. *See* Ind. Trial Rule 61 (providing that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"). As the Petitioners note, "[n]o party was prejudiced from the time the Petition was filed until the hearing date, because the status quo of South Road was maintained." *Appellees' Brief* at 10. Although the Remonstrators claim that they were prejudiced because they "were forced to wait nearly five months to voice their objections[,]" they do not explain why such delay, standing alone, prejudiced their rights. *Reply Brief* at 7. If anything, the delay benefitted the Remonstrators by preserving their right to access to South Road for several additional months while the petition was pending. Because the Remonstrators cannot demonstrate prejudice resulting from the delayed hearing, they have not established reversible error on that basis.

### 2. Merits of the Board's Decision

[14] The Remonstrators also challenge the merits of the Board's decision to vacate South Road. I.C. § 36-7-3-12 provides that within thirty days of the adoption of an ordinance vacating a public road, any aggrieved person may appeal to the circuit, superior, or probate court of the county, which "shall try the matter de novo[.]" This court has noted, however, that the phrase "de novo," when used in statutes granting judicial review of administrative or legislative proceedings, has not been construed in the usual sense because "our constitutional relationship with the other branches of government precludes such a review." *Smith v. City of Shelbyville*, 462 N.E.2d 1052, 1055-56 (Ind. Ct. App. 1984)

(quoting *City of Indianapolis v. Nickel*, 331 N.E.2d 760, 769 (Ind. Ct. App. 1975)). Rather, the trial court is limited to determining whether the decision was arbitrary, capricious, or an abuse of discretion. *Id.*

[15]     Moreover, when a trial court's findings are based on a paper record, the appellate court conducts its own de novo review of the record. *Equicor Dev., Inc. v. Westfield-Washington Twp. Plan Comm'n*, 758 N.E.2d 34, (Ind. 2001). *See also West v. Office of Ind. Sec'y of State*, 54 N.E.3d 349, 352 (Ind. 2016) (explaining that when a trial court reviews a paper record only, "we are in just as good of a position as the trial court was to resolve the case, and thus need not defer to its ruling"). "To navigate our analysis, we thus follow the same guideposts relied upon by the reviewing courts below." *West*, 54 N.E.3d at 352. Because the trial court in this case ruled on a paper record only, we need not defer to its judgment; instead, we review the record applying the same standard as the trial court. That is, we will reverse only if the Board's decision is arbitrary, capricious, or an abuse of discretion. *See Smith*, 462 N.E.2d at 1055-56. A decision is arbitrary and capricious if it is made without any consideration of the facts and lacks any basis that may lead a reasonable person to reach the same decision. *Ind. Pesticide Review Bd. v. Black Diamond Pest & Termite Control, Inc.*, 916 N.E.2d 168, 179 (Ind. Ct. App. 2009), *trans. denied.* In other words, a decision is arbitrary and capricious if it lacks a reasonable basis. *Id.*

[16]     I.C. § 36-7-3-12(e) provides that "[a]fter a hearing on the petition, the legislative body may, by ordinance, vacate the public way or public place." This court has noted that "[t]he statute, by use of the word 'may'[,] . . . confers discretionary

authority on the legislative body." *Smith*, 462 N.E.2d at 1056. The Remonstrators' arguments on appeal are based on I.C. § 36-7-3-13, which provides as follows:

> A remonstrance or objection permitted by section 12 of this chapter may be filed or raised by any person aggrieved by the proposed vacation, but only on one (1) or more of the following grounds:
>
> (1) The vacation would hinder the growth or orderly development of the unit or neighborhood in which it is located or to which it is contiguous.
>
> (2) The vacation would make access to the lands of the aggrieved person by means of public way difficult or inconvenient.
>
> (3) The vacation would hinder the public's access to a church, school, or other public building or place.
>
> (4) The vacation would hinder the use of a public way by the neighborhood in which it is located or to which it is contiguous.

The Remonstrators argue that if any one of these circumstances is found to exist, the legislative body considering a petition to vacate must deny a petition to vacate. They argue further that they presented evidence indicating that all four bases for remonstration existed and, consequently, the petition to vacate should have been denied.

The Appellees note, however, that I.C. § 36-7-3-13 refers only to the grounds upon which remonstrations may be made; it says nothing concerning the

Board's authority to grant a petition to vacate a public road notwithstanding such objections.[4] According to the Appellees, the only necessary prerequisite to the vacation of a public road is the filing of a petition meeting the statutory requirements of I.C. § 36-7-3-12. We need not resolve this question because even if we assume that I.C. § 36-7-3-13 limits the Board's discretion in the manner the Petitioners suggest, we cannot conclude that the Board's decision was arbitrary and capricious or an abuse of discretion.

[18] We must first address the Remonstrators' argument that it was improper for the Board to consider the prolonged nonuse of South Road in considering the petition to vacate. There is nothing in the language of the applicable statutes that would prohibit the Board from weighing the historical nonuse of South Road against the Remonstrators' evidence and arguments against vacating the road. Indeed, this court has considered nonuse in previous opinions affirming decisions to vacate public roads. *See Richardson*, 965 N.E.2d at 743 (reasoning that "[i]n essence, the County's abandonment and decades of non-use have disengaged this roadbed from the active county highway system"); *Kewanna*, 420 N.E.2d at 1294 (affirming decision to vacate an alley based in large part on "longstanding lack of use"). In any event, evidence that a public road has not

---

[4] We note that *Town of Kewanna v. Hollis*, 420 N.E.2d 1292 (Ind. Ct. App. 1981) was decided under a now-repealed statute that allowed petitions to vacate to be filed in the local trial court and required the court to grant a petition to vacate a road "if, in its opinion, justice shall require it." Id. at 1293. The court noted that prior case law had defined "justice . . . by reference to the grounds prescribed for a remonstrance[.]" *Id.* The current statute, however, has eliminated the "justice" standard and transferred authority to rule on petitions to vacate to local legislative bodies. Thus, the continuing applicability of the standard articulated in *Kewanna* is questionable.

been used in many years is relevant to any consideration of the grounds for remonstrance listed in I.C. § 36-7-3-13. Accordingly, we conclude that the Board properly considered the nonuse of South Road when ruling on the petition to vacate.

[19] The Remonstrators also argue briefly that the evidence presented to the Board does not support a finding of nonuse, but even the evidence most favorable to the Remonstrators' position supports such a finding. The only evidence concerning use of South Road as a point of access came from Tom Smith, a manager for Indian Mound Farm, who stated that South Road had been used to harvest hay from the DeFries property "multiple years ago." *Appellant's Appendix Volume 2* at 160. Additionally, although Nancy DeFries testified that South Road had been cleared seventeen years earlier for the installation of utility lines, there is no indication that it was used as a means of ingress and egress at that time. Thus, by all accounts, South Road has not been used at all in many years, and there is no indication that it has ever been used regularly by the public.

[20] We now turn our attention to the Remonstrators' challenge to the Board's finding that the statutory grounds for remonstrance had not been proven. The Remonstrators first argue that vacating South Road will hinder the growth and orderly development of the neighborhood. *See* I.C. § 36-7-3-13(2). Specifically, they note that the Town of New Harmony has obtained a grant to install a storm water drainage system on South Road, which will require the land to be

cleared and the creation of a path.[5] According to the Remonstrators, this path could be used as part of a trail system that runs throughout New Harmony. They fail to note, however, that evidence in the record indicates that the New Harmony Town Council had previously voted to forgo developing South Road as part of its trail system. South Road's potential suitability for use as a trail, particularly in the absence of any current plans to do so, is not enough to establish conclusively that vacating the road would hinder the growth and development of the neighborhood.

[21] The Remonstrators also argue that they presented uncontradicted evidence that vacating South Road would make it difficult or inconvenient to access the property owned by the DeFrieses and Indian Mound Farm.[6] *See* I.C. § 36-7-3-13(2). Smith stated at the public hearing that Indian Mound Farm had planned to use South Road at some point in the future to harvest timber from its property. Smith stated that there were multiple ways to access the property, but South Road provided the best path to drag timber off of the property while doing the least damage to existing crop land. Nancy DeFries also stated that

---

[5] In 2011—prior to the filing of the petition to vacate South Road—Posey County granted the Town of New Harmony an irrevocable license to install the storm water drainage system. Additionally, the ordinance adopted by the Board provides that South Road is vacated subject to a broad utility easement that specifically allows for the construction and maintenance of a storm water system. Thus, vacating South Road did not affect the Town's ability to carry out the storm water drainage project.

[6] The Petitioners assert that the Board agreed with the Remonstrators' arguments in this regard. In support, they cite statements made during the public hearing by two of the three commissioners. We note, however, that the Board did not enter written findings. Our review of the transcript reveals that these statements were made in the midst of the public hearing and were part of the Board's fact-finding and deliberative processes. Accordingly, we do not view them as pronouncements of the facts as found by the Board.

she and her husband had let trees grow on the rear portion of their property with the idea that they could later be harvested, and that it would be difficult and expensive to do so without the use of South Road. Neither Smith nor DeFries indicated that there were concrete plans to harvest timber any time in the near future.

[22] It is undisputed that both the DeFrieses and Indian Mound Farm have access to their property by way of other public roads and that they have not used South Road to access their property in many years, if ever. At most, the DeFrieses and Indian Mound Farm have argued that they may wish to use South Road at some point in the future for one specific and limited purpose. Given the speculative nature of this evidence and the uncertainty as to whether it would be feasible to use South Road for timbering, it was within the Board's discretion to attribute greater weight to the lengthy history of nonuse in determining whether vacating the road would have an actual impact on neighboring landowners. *See Kewanna*, 420 N.E.2d at 1294 (finding that speculative evidence concerning the necessity of the alley to the town's growth did not require denial of petition to vacate in light of the Town's longstanding lack of use of the alley). The Board's finding that vacating South Road would not make access to the Remonstrators' lands difficult or inconvenient was not arbitrary, capricious, or an abuse of discretion.

[23] The Remonstrators also claim that vacating South Road would hinder the public's access to a school. *See* I.C. § 36-7-3-13(3). They claim that "[i]t is common knowledge and widely accepted that South Road led to a public

school which is now closed." *Appellants' Brief* at 21. They further assert that it is irrelevant that the school is closed because it remains a public building. Although there were a handful of vague references made at the hearing to the existence of an abandoned public school somewhere near South Road, its location was never established on the record and it is not shown on the map included in the record. Moreover, given the condition of South Road and the fact that it has been abandoned for many years, it is clear that South Road has not been used to reach the school in the recent past, if ever. There is simply no evidence in the record that the public has ever relied on South Road to reach a school.

[24] Finally, the Remonstrators argue that vacating South Road would hinder the use of a public way—namely, South Road itself. *See* I.C. § 36-7-3-13(4). We are unconvinced. The evidence clearly establishes that South Road is a dead-end road that is not being used, has not been used in many years, and has long been in a condition such that it cannot be used as a road. The Remonstrators have not established error in this regard.

[25] In sum, the Remonstrators have not established that the Board's decision to vacate South Road was arbitrary, capricious, or an abuse of discretion. Accordingly, we must affirm.

[26] Judgment affirmed.

Robb, J. and Crone, J., concur.