## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2018, 10:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald J. Frew
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.M., <br> *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Petitioner* | January 31, 2018 <br><br> Court of Appeals Case No. <br> 02A04-1708-JV-1976 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Michael T. Douglass, Judge Pro Tempore <br><br> Trial Court Cause No. <br> 02D07-1703-JD-359 |

**Vaidik, Chief Judge.**

# Case Summary

[1] J.M. appeals the juvenile court's order committing him to the custody of the Indiana Department of Correction (DOC) following a violation of probation. We affirm.

# Facts and Procedural History

[2] In May 2017, a dispositional hearing was held on J.M.'s admission that he resisted law enforcement. The juvenile court suspended J.M.'s commitment to the DOC, released him into the custody of his grandmother, and ordered him to participate in the Allen County Juvenile Probation Department's Electronic Monitoring Program.

[3] A few weeks later, J.M., without permission from the juvenile probation department, removed his electronic-monitoring device and ran away from his grandmother's home. His whereabouts were unknown for approximately two weeks. When officers found J.M., he was sleeping inside of a stolen car and had marijuana in his system. The juvenile probation department petitioned for a modification of disposition, recommending that J.M. be placed in the custody of the DOC. A hearing was held, and J.M. admitted that he violated the terms of his probation.

[4] Before the court disposed of J.M.'s case, a psychological evaluation was conducted. J.M. was given the Kaufman Brief Intelligence Test-2nd Edition, which measures an individual's intellectual functioning. J.M. had previously

taken this test in 2013 and received a score that classified his intelligence as "average." Appellant's App. Vol. II p. 41. J.M.'s 2017 score placed him in the "Below Average to Lower Extreme." *Id.* at 39. The test administrator noted that J.M. suffered a "serious head injury when he was a young child, which could be contributing to the low cognitive functioning." *Id.* at 41. However, the administrator noted that additional neurological testing would need to be conducted to determine if J.M. had a brain injury that was affecting his intellect. The administrator did not identify any specific follow-up testing for J.M.

[5]     At the dispositional hearing, the juvenile probation department recommended that probation be revoked and that J.M. be committed to the DOC. The department drew attention to J.M.'s extensive delinquent history and the multiple opportunities afforded to J.M. to be rehabilitated:

> This is designated Case 13. We've offered informal, formal. He's had suspended time at [the Allen County Juvenile Center]. He's been confined at [the Allen County Juvenile Center]. He's been sent to residential placement. He does have a prior DOC commitment. . . . [H]e was unsatisfactorily released [from community supervision with the Center for Non-Violence]. And he has subsequently been ordered to participate in substance – in thinking errors in the secure detention – in secure detention here at the juvenile center on seven different occasions. He's had drug and alcohol. He's had sub – substance use counseling. He's had medication reviews. He's had individual and anger management counseling. We've done psychiatrics. He's attended [the Day and Evening Reporting Program]. We've had psych assessments. He's had home-based family-centered casework and therapy services on multiple occasions, mental health assessments. And

> he's been a member – or a student of Deer Run Academy or [the Allen County Learning Academy] on two different occasions. Probation has attempted to work with this young man. It's clear by the orders that have been made through the court here he's failed to utilize any of the tools that were – that have been provided for him.

Tr. Vol. II pp. 7-8. J.M. argued that more neurological testing needed to be conducted to understand why his intellectual ability had declined and that he should be released back to his grandmother's custody rather than the DOC's. The juvenile court agreed with the juvenile probation department and made J.M. a ward of the DOC.

[6]     J.M. now appeals.

# Discussion and Decision

[7]     J.M. contends that it was an abuse of discretion for the juvenile court to conclude that he should be committed to the DOC. The disposition of a juvenile is within the juvenile court's discretion, "to be guided by the following considerations: the safety of the community, the best interests of the child, the least restrictive alternative, family autonomy and life, freedom of the child, and the freedom and participation of the parent, guardian, or custodian." *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006); *see also* Ind. Code § 31-37-18-6. We will reverse a juvenile disposition only upon a showing that the juvenile court abused its discretion. *K.S.*, 849 N.E.2d at 544. An abuse of discretion occurs when the disposition is "clearly against the logic and effect of the facts and

circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.*

[8]     J.M. argues that the juvenile court's decision was not in his best interests or consistent with his special needs because there is no indication that the DOC will conduct any neurological testing. J.M. relies on the discussion between the juvenile court and the juvenile probation officers at his dispositional hearing to support his claim. At the hearing, the juvenile court asked the juvenile probation officers if the DOC would be able to administer the recommended neurological testing or if the DOC would conduct its own assessment. The officers responded that the DOC would do its own assessment, but the officers would include a copy of the psychological report with an instruction letter notifying the DOC that the juvenile court requested that the recommended neurological testing be conducted. Not only does J.M. mischaracterize this conversation, but he also does not reply to the State's argument that the DOC is statutorily required to conduct medical and psychological exams and order any additional services that are appropriate. Indiana Code section 11-10-2-4 requires that all committed offenders in the custody of the DOC undergo medical and psychological evaluations. Based on the results of these evaluations, the DOC "shall . . . order medical, psychiatric, psychological, or other services it considers appropriate." Ind. Code § 11-10-2-5(a). In other words, the DOC is statutorily required to do initial medical and psychological examinations of J.M. upon his commitment. The DOC is then obligated to

order additional services it deems necessary for J.M., including additional testing.

[9] Furthermore, J.M. has an extensive history of delinquent activity—this is his thirteenth case in approximately four years. During this time, he has been offered countless rehabilitative services, including: formal and informal probation, the Allen County Learning Academy, the Day and Evening Reporting Program, and the Allen County Juvenile Center. Even if the DOC was not statutorily obligated to conduct medical and psychological examinations, J.M. has exhausted the juvenile court's resources. The only viable option was for J.M. to be committed to the DOC. Accordingly, the juvenile court did not abuse its discretion when it made J.M. a ward of the DOC.

[10] Affirmed.

May, J., and Altice, J., concur.